## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JOHNNA GADOMSKI,

          Plaintiff,

      v.

CITY OF ATLANTA, LIEUTENANT
DESMOND FLOYD, in his individual
capacity, and OFFICER ZADY LUNA,
in his individual capacity,

          Defendants.

CIVIL ACTION FILE NO.
1:23-cv-04036-VMC

---

### BRIEF IN SUPPORT OF DEFENDANT CITY OF ATLANTA'S
### MOTION TO DISMISS AMENDED COMPLAINT

---

COMES NOW, Defendant CITY OF ATLANTA, and files and serves this Brief in Support of its Motion to Dismiss Amended Complaint, showing this Honorable Court as follows:

### I.    <u>INTRODUCTION</u>

This case arises out of the arrest and prosecution of Johnna Gadomski ("Plaintiff") originating at a protest at a local councilmember's home. Plaintiff originally initiated this action on September 8, 2023. In response to the City's Motion to Dismiss, Plaintiff amended her complaint and tried to bolster the municipal liability claims against the City. However, trying to force municipal

1

liability upon the City here is like fitting a square peg in a round hole. Quite simply, municipal liability does not apply here. For the reasons explained more fully below, the relied-upon prior incidents and the facts of this case are insufficient for *Monell* liability.

Plaintiff's lawsuit names the City of Atlanta, Lieutenant Desmond Floyd, and Officer Zady Luna all as defendants, but this Motion to Dismiss pertains only to the City of Atlanta (the "City"). Plaintiff raises numerous claims against Lt. Floyd and Officer Luna but only one municipal liability claim against the City.

The protest arose out of an issue wherein the City is proposing the use of Intrenchment Creek Park as the Atlanta Public Safety Training Center, which Plaintiff refers to as "Cop City." (Doc. 14, ¶ 13). The plan to turn Intrenchment Creek Park into a training facility has drawn opposition. This opposition manifested into the protest at issue here – a gathering of individuals at Atlanta Councilwoman Natalyn Archibong's home to chant, march, and hold signs in opposition of the Atlanta Public Safety Training Center.

Given the disruptiveness of the protest, police arrived at the scene of the protest to maintain civility and order. Until they were warned that they were in violation of the noise ordinance, the protesters used megaphones to voice their opposition. Police officers announced that the protesters were obstructing traffic within the residential area and must leave. The protesters remained – walking back

and forth on the street.  Plaintiff's Complaint suggests that the protesters were in the process of leaving when numerous protesters were arrested for Pedestrian in the Roadway violations.  While Officer Luna performed the actual arrest of Plaintiff, the Complaint alleges that Lt. Floyd ordered the arrests.

The arrests resulted in five very similar federal lawsuits against the City, Lt. Floyd, and the various arresting officers.  (*See* Motion to Consolidate Cases).

Plaintiff's Amended Complaint contains multiple counts against Lt. Floyd and Officer Luna – § 1983 unlawful seizure, § 1983 malicious prosecution, O.C.G.A. § 51-7-40 malicious prosecution, and § 1983 First Amendment retaliation.  However, this Motion to Dismiss seeks to only dismiss the City from the matter, where Plaintiff brings a claim for Municipal Liability.  (Doc. 14, ¶¶ 37-50).

Dismissal of the City is assuredly appropriate.

## II.   FACTS

The following set of facts is derived from Plaintiff's Amended Complaint, in accordance with the motion to dismiss standard.  By relying on these facts in support of its Motion, the City does not admit to the truth or accuracy of these allegations.

A protest occurred at Councilwoman Archibold's personal home in response to the council's vote related to the proposal to use a public park to develop Atlanta Public Safety Training Center.  (Doc. 14, ¶¶ 12-13).  Although the protesters were holding signs and chanting, they (including Plaintiff) were consciously standing as

3

close to the curb of the street as possible to avoid obstructing traffic. (Doc. 14, ¶ 14). Police arrived at the protest approximately twenty minutes after its commencement and later warned the protesters that they were in violation of the City's noise ordinance. (Doc. 14, ¶ 17). The protesters stopped using the megaphones to loudly spread their message, and, thus, no arrests occurred because of a noise violation. (Doc. 14, ¶¶ 19, 23).

Later on, during the protest, the officers found it necessary to instruct the protesters that they were obstructing traffic and had to leave. (Doc. 14, ¶ 20). The protest did not immediately end. (Doc. 14, ¶ 21). However, Plaintiff states that the protesters were walking away and "clearly in the process of leaving the area" when they were arrested for Pedestrian in the Roadway violations. (Doc. 14, ¶ 22). Along with some of the other protesters, Plaintiff was arrested and charged with a Pedestrian in the Roadway violation. (Doc. 14, ¶ 22). It was Lt. Floyd who ordered these arrests, but various individual officers performed the physical arrests. (Doc. 14, ¶ 21). Officer Luna effectuated the arrest of Plaintiff. (Doc. 14, ¶ 22).

The Fulton County Solicitor's Office never filed an accusation in Plaintiff's case, and, therefore, Plaintiff believes the Solicitor's Office has decided not to prosecute her case. (Doc. 14, ¶ 26). The result is the Amended Complaint.

### III.   ARGUMENT AND CITATION OF AUTHORITY

### 1. Motion to Dismiss Standard.

4

Mere conclusory allegations or bare legal conclusions are generally not sufficient to withstand a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim.  See *Briehl v. General Motors Corp.*, 172 F.3d 623, 627-28 (8th Cir. 1999).  In general, a motion to dismiss under 12(b)(6) asserts that even if the well pleaded material allegations of the complaint are true, such allegations are legally insufficient.  Such a motion should be granted when it appears to a certainty that the plaintiff is entitled to no relief under any state of facts which can be proved in support of the claim.  See *Haines v. Kerner*, 92 S. Ct. 594 (1972).

Where a defendant challenges a complaint for failing to adequately state a claim upon which relief can be granted, the court should apply a "two-pronged approach" in analyzing the complaint.  See *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  First, the court should "eliminate any allegations in the complaint that are merely legal conclusions." *Id.* This first prong excludes "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.   Second, the court should assume that all well-pleaded factual allegations are true "and then determine whether [those allegations] plausibly give rise to an entitlement to relief." *Am. Dental Ass'n.*, 605 F.3d at 1290.  In determining plausibility, the court should "draw on its experience and common sense." *Iqbal*, 556 U.S. at 664.  Moreover, it is proper for the court to infer "'obvious alternative

explanation[s]' which suggest lawful conduct rather than the unlawful conduct the plaintiff[s] would ask the court to infer." *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Iqbal* and relying on *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

Ultimately, if the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 1289 (quoting *Twombly*, 550 U.S. at 570).

## 2. **Plaintiff's Claim for Municipal Liability Should be Dismissed.**

Plaintiff makes multiple statements regarding the basis for *Monell* liability, stating mere legal conclusions that should be eliminated under *Iqbal*. The first can be found in the following statement:

> The City is liable under the Monell doctrine due to its failure to provide proper training and because there was a decision by a final policy maker to arrest Ms. Gadomski or to conduct arrests in cases such as Ms. Gadomski's.

(Doc. 14, ¶ 38). Plaintiff goes on to allege that:

> The City has a long history of not adequately training its officers when it comes to protecting and respecting citizens' First Amendment rights which include violating citizens' rights to film the police that ultimately resulted in a contempt order against the City in 2015.

(Doc. 14, ¶ 39). Also, one sentence in the Amended Complaint suggests the City is liable for a policy or custom:

> This leads to a conclusion that there is an official policy or directive by final policy maker(s) within the City of Atlanta to engage in practice of arresting protesters under the pretext of violating pedestrian in the

roadway laws and the City – if not deliberately promoting this policy – is at the very least deliberately indifferent to it.

(Doc. 14, ¶ 40).

In support of these theories, Plaintiff pleads a handful of past incidents. However, Plaintiff has not shown the existence of an unofficial custom or policy or improper training, nor that such a custom or policy or improper training was the moving force behind any alleged violation.

The Court may notice that Plaintiff asserts two different theories as to why these past incidents support the *Monell* basis. First, Plaintiff alleges that the City insufficiently trains its officers as to respecting citizens' First Amendment rights, demonstrated by the violation of "citizens' right to film the police." (Doc. 14, ¶ 39). Second, Plaintiff alleges that the City "routinely arrest protesters under the pretext of violating pedestrian in the roadway laws." (Doc. 14, ¶ 40). Some alleged past incidents only fit into the first category and some only fit into the second category.

### a. *Monell* Doctrine

Municipal liability under § 1983 may not be grounded on a theory of *respondeat superior. Monell v. New York Dept. of Social Services,* 436 U.S. 658 (1978). That said, it is "well established that a municipality may be held liable under § 1983 . . . when the deprivation at issue was undertaken pursuant to [municipal] 'custom' or 'policy.'" *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479 (11th Cir. 1991). Municipal liability may be based on, among other things, "a practice or

custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." *Church v. City of Huntsville*, 30 F. 3d 1332, 1343 (11th Cir. 1994). Congruently, a plaintiff may establish a policy or custom exists by showing a "persistent and wide-spread practice" and the government's actual or constructive knowledge of that practice coupled with deliberate indifference toward same. *Id.* at 1342-43.

To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, "although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *Praprotnik v. City of St. Louis*, 485 U.S. at 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). In other words, a longstanding and widespread practice is deemed authorized by the final policymaking officials because they must have known about it but failed to stop it. *Brown,* 923 F.2d at 1479-81.

Along with these other principles, a municipal official who has 'final policymaking authority' in a certain area of the city's business may by his or her action subject the government to § 1983 liability when the challenged action falls within that authority." *Praprotnik*, 485 U.S. at 127; *see also Mandel v. Doe*, 888 F. 2d 783, 792–93 (11th Cir. 1989). To impose liability, a plaintiff must show: "(1) that his constitutional rights were violated; (2) that the municipality had a custom . .

8

. that constituted deliberate indifference to that constitutional right; and (3) that the

. . . custom caused the violation." *McDowell v. Brown*, 392 F. 3d 1283, 1289 (11th

Cir. 2004); *Brown, supra*, 923 F. 2d 1474, 1479 (11th Cir. 1991). And, of course,

the offending custom or policy must be the "moving force" behind the violation.

*Monell*, 436 U.S. at 694.

Also, a failure to train can be the basis for liability under 42 U.S.C. § 1983,

but only in "limited circumstances," where there is inadequate training that is a city

policy, and that policy causes the violation of a citizen's constitutional rights. *Gold*

*v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *City of Canton v.*

*Harris*, 389 U.S. 378, 387-91 (1989)).

Since cities rarely have an express policy of inadequately training or

supervising its employees, a plaintiff may prove a city policy by showing a

"deliberate indifference" to the rights of its citizens. *Gold*, 151 F.3d at 1350. In

other words, the failure to train its employees in a relevant respect must be such a

shortcoming that it evidences a policy or custom. *Id.* (quoting *City of Canton*, 489

U.S. at 388-89.

"Deliberate indifference can be established in two ways: by showing a

widespread pattern of similar constitutional violations by untrained employees or by

showing that the need for training was so obvious that a municipality's failure to

train its employees would result in a constitutional violation." *Mingo v. City of*

*Mobile, Ala.*, 592 Fed. Appx. 793, 799-800 (11th Cir. 2014). Plaintiff "must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold*, 151 F.3d at 1350. Without notice of a necessity to train, a municipality is not liable as a matter of law. *Id.* at 1351. Additionally, when relying on past complaints, a plaintiff must demonstrate that the complaints had merit. *Id.*

**b. The Alleged Past Incidents are Insufficient to Prove Municipal Liability**

In support of her municipal liability claim, Plaintiff makes conclusory allegations that the City "has a long history of not adequately training its officers when it comes to protecting and respecting citizens' First Amendment rights" and "routinely arrests protesters under the pretext of violating pedestrian in the roadway laws." (Doc. 14, ¶¶ 39-40). These are the "threadbare recitals" and "conclusory statements" that are insufficient under the *Twombly/f* analysis. In support of her municipal liability claim, Plaintiff references the following:

- **_Baker v. City of Atlanta_**. According to Plaintiff's Complaint, in *Baker v. City of Atlanta, et al.*, Civil Action No. 1:21-cv-04186-MLB, 19 protesters were arrested for violating the Pedestrian in the Roadway statute at the beginning of a protest. (Doc. 14, ¶ 40). Plaintiff also points out that, in *Baker*, a high ranking officer ordered the arrest of all protesters at the scene. (Doc. 14, ¶ 40). **This very Court dismissed both *Monell* claims against the City, stating that "Plaintiffs fail to state a *Monell* claim for municipal liability."** *Baker v. City of Atlanta*, 2023 WL 2583116, at *5 (N.D. Ga. March 20, 2023) (emphasis added).

- ***May of 2022 Mass Arrest.*** Plaintiff mentions another incident, without a reference or citation, wherein there was a "mass arrest" in May 2022 of protesters in Inman Park that were charged with pedestrian in the roadway violations. (Doc. 14, ¶ 40). That is it. There are not enough allegations to reference the viability or accuracy of this claim.

- ***Arrests of Melanie Silverstein, Ashley Dixon, and Ryan Michael Seal.*** On the same day as the *May of 2022 Mass Arrest,* Silverstein, Dixon, and Seal were allegedly arrested as they were walking home from a protest. (Doc. 14, ¶ 44). According to Plaintiff, Silverstein and Dixon were allegedly singled out for carrying a "Stop Cop City" sign and charged with a Pedestrian in the Roadway violation. (Doc. 14, ¶ 44). The Amended Complaint says that Seal was arrested on Pedestrian in the Roadway charges but then says he was released without charges. (Doc. 14, ¶ 45). There are irrelevant facts about the alleged confiscation of Seal's notebook. (Doc. 14, ¶ 45).

- ***Schilling v. Doherty.*** This is an allegation arising out of the arrest of Donovan Schilling during 2020 protests for violating the Pedestrian in the Roadway statute. (Doc. 14, ¶ 41). Plaintiff states that the *Schilling v. Doherty* case is still pending. (Doc. 14, ¶ 41). While this may be true, Plaintiff is attempting to double-dip. Schilling initiated a case against the City, (*Schilling v. City of Atlanta*, 1:21-cv-04242-MLB, Northern District of Georgia), which was consolidated with the *Baker* case mentioned above. (*Baker v. City of Atlanta*, 1:21-cv-04186-MLB, Doc. 14, p. 1). As explained above, the *Monell* claims in *Baker* (and, thus, *Schilling*, as consolidated) were dismissed. *Baker,* 2023 WL 2583116 at *5.

- ***Watchulonis v. City of Atlanta.*** The *Watchulonis* case arose out of a journalist's alleged detainment during his investigation in Intrenchment Creek Park. *Watchulonis v. City of Atlanta*, 1:23-cv-2204-TCB, Northern District of Georgia. The detainment occurred on June 15, 2022, well *after* the arrest giving rise to the case at hand. Watchulonis was not arrested or charged as a part of the incident. *Id.* **The Northern District of Georgia court granted the City's Motion to Dismiss in *Watchulonis*, finding that Watchulonis failed to stated a claim for municipal liability under § 1983 and that there was insufficient allegations to show that the final policymaker was aware of any repeated acts that would give rise to an unofficial custom.** (*Watchulonis v. City of Atlanta*, 1:23-cv-2204-TCB, Doc. 38, pp. 3, 14).

11

   o  Plaintiff seeks to incorporate by reference the First Amendment violations referenced in *Watchulonis* to save space. (Doc. 14, ¶ 46). The *Watchulonis* complaint references: (1) a 2009 incident where APD officers allegedly interfered with a citizens' right to record police activity (*Calhoun v. City of Atlanta*); (2) another 2009 incident where an arrestee alleged a false arrest while photographing police activity (*Anderson v. City of Atlanta*); (3) a 2014 case involving the alleged arrest of a journalist for disorderly conduct while trying to film police activity during a protest (*Ruch v. City of Atlanta*); (4) another 2014 case involving the arrest of a citizen for disorderly conduct while filming police activity during a protest (*Toole v. City of Atlanta*); (5) a 2020 arrest of a photo-journalist for a curfew violation while filming police activity (*Hassan v. City of Atlanta*); and (6) a vague incident involving an unnamed driver for violating the hands-free driving law. (*Watchulonis v. City of Atlanta*, 1:23-cv-2204-TCB, Doc. 38, pp. 8-9).

The relevant question is whether these incidents create a "longstanding custom," show a "deliberate indifference," or show a need to train. They do not.

Although there is no bright line test for determining a custom, policy, or practice, there must be a longstanding and widespread practice of the constitutional violation. *Marantes v. Miami-Dade County*, 649 Fed. Appx. 665, 673 (11th Cir. 2016). "One or two incidents of abuse is generally insufficient to create a pattern." *Williams v. Fulton County School District*, 181 F. Supp. 3d 1089, 1122 (N.D. Ga. 2016).

Failure-to-train claims are subject to a similar analysis.

A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the

consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability.  Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotations and citations omitted).

Here, Plaintiff has presented an assortment of unrelated past incidents in support of her municipal liability claims.  In other words, Plaintiff has not "nudged [her] claims across the line from conceivable to plausible," as required by the Supreme Court. *Twombly*, 550 U.S. at 1974.

First, this very court dismissed both *Monell* claims against the City in *Baker v. City of Atlanta*, 2023 WL 2583116, at *10 (N.D. Ga. Mar. 20, 2023).  Although the Eleventh Circuit has stated that the past complaints of related police misconduct must have "merit,"  Plaintiff has not and cannot show that the *Baker* case has merits or that it otherwise supports her allegations. *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)

Plaintiff also vaguely asserts another incident that she describes as a "mass arrest in May of 2022 when a number of Stop Cop City protesters were arrested in Inman Park and charged with pedestrian in the roadway." (Doc. 14, ¶ 40).  Putting aside that the alleged incident occurred *after* Plaintiff's arrest (see more below), there are no allegations even suggesting that the arrests were improper.  In other

words, the protestors may have been violating the Pedestrian in the Roadway statute, making the charges completely appropriate. If the arrested protesters were in fact violating the Pedestrian in the Roadway statute, which the Amended Complaint makes unknown, there is no contention explaining that the arrests were otherwise unlawful.

The Silverstein, Dixon, and Seal arrests likewise do not support a *Monell* claim. The Amended Complaint includes insufficient details, in violation of *Iqbal/Twombly*, for the City to assess these incidents. As will be discussed more below, these arrests occurred after Plaintiff's arrest and, thus, could not give the final policymaker notice.

The *Schilling* case is double-dipping. Schilling's claims against the City were consolidated into the *Baker* case, which has been dismissed.

Finally, Plaintiff throws in *Watchulonis v. City of Atlanta*, which certainly does not support her theory of municipal liability. *Watchulonis* does NOT involve the Pedestrian in the Roadway statute. *Watchulonis v. City of Atlanta*, 1:23-cv-2204-TCB, Northern District of Georgia. In fact, the plaintiff in *Watchulonis* was not arrested or charged at all. *Id.* Even more, the City's Motion to Dismiss in *Watchulonis* was granted (a Motion for Reconsideration is now pending). *Id.*

The cases cited in *Watchulonis* (and incorporated by Plaintiff by reference) are likewise irrelevant. Plaintiff does not specify whether the past incidents in

14

*Watchulonis* involve the Pedestrian in the Roadway statute.  Furthermore, the Court has already stated that these incidents "are too far in the past to establish a claim of municipal custom."  (*Watchulonis v. City of Atlanta*, 1:23-cv-2204-TCB, Doc. 38, p. 8).  Even the most timely incident, *Hassan v. City of Atlanta*, is irrelevant here.  In *Hassan*, arising out of a 2020 arrest, the "plaintiff was challenging an official law of the City, not trying to establish an unofficial custom."  (*Watchulonis v. City of Atlanta*, 1:23-cv-2204-TCB, Doc. 38, p. 12).  The other alleged incidents are too far in the past to implicate *Monell* liability.

Thus, the alleged incidents are insufficient to constitute a widespread pattern or practice by the City.  Likewise, the alleged incidents are insufficient to show that policymakers knew or should have known of a need to train.  Pursuant to *Iqbal*, the Court should draw on its experience and common sense in assessing Plaintiff's Amended Complaint.  *Iqbal*, 556 U.S. at 664.  Plaintiff's municipal liability claims should be dismissed.

### c. The City's Final Policymaker was NOT on Notice of a Need to Train or a Policy or Custom.

Plaintiff's arrest that gives rise to this action occurred on September 8, 2021. (Doc. 14, ¶ 12).  The *May of 2022 Mass Arrest* and the *Arrests of Melanie Silverstein, Ashley Dixon, and Ryan Michael Seal* occurred on May 14, 2022.  (Doc. 14, ¶¶ 43-44).  The subject incident in *Watchulonis* occurred on June 15, 2022.  *Watchulonis v. City of Atlanta*, 1:23-cv-2204-TCB, Northern District of Georgia.  Referenced in

*Watchuloni*s is the *Incident Involving the Unnamed Driver*, which occurred in 2022. (*Watchulonis v. City of Atlanta*, 1:23-cv-2204-TCB, Doc. 38, p. 9).

"[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the city and the opportunity to conform to constitutional dictates." *Connick v. Thompson*, 563 U.S. 51, 63 n. 7 (2011). *See Thompson v. Sheriff, Pinellas County, FL*, 542 Fed. Appx. 826 (11th Cir. 2013) ("We conclude that such post-incident complaints could not have put the Sheriff on notice of a need for supervision as of [the date of the subject incident]."); *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990) (agreeing with the district court that there must be "evidence of a history of widespread **prior** abuse") (emphasis added).

The four incidents mentioned above – the *May of 2022 Mass Arrest*, the *Arrests of Melanie Silverstein, Ashley Dixon, and Ryan Michael Seal*, the *Watchuloni*s incident, and the *Incident Involving the Unnamed Driver* – all occurred after the subject arrest. Therefore, the case law is well settled that these events do NOT support a *Monell* claim against the City.

### d. Plaintiff's Complaint Confuses the Role of the **Final** Policymaker

"A municipal governing body may be held liable for acts or policies of individuals to whom it delegated final decisionmaking authority in a particular area." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1291 (11th Cir. 2004). Plaintiff seemingly applies supervisory liability analysis to *Monell* final policymaker

16

requirements, which is fatal to her case. Determining if an individual is a final policy maker is a question of law for which the judge decides. *Wilson ex rel. Estate of Wilson v. Miami-Dade County*, 2005 WL 3597737, at *8 (S.D. Fla. Sep. 19, 2005). The court "may not assume that final policymaking entity lies in some entity other than that in which state law places it. To the contrary, [the court] must respect state and local law's allocation of policymaking authority." *McMillan v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996) (internal citations omitted).

For *Monell* liability, Plaintiff "must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue." *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1330 (11th Cir. 2003). A city can only be held liable for inadequate training only when a policymaker is deliberately indifferent to the need to train. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-890 (1989). "[A] municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review." *Scala v. City of Winter Park*, 116 F.3d 1396, 1401 (11th Cir. 1997).

Plaintiff identifies Lt. Floyd as the City's final policymaker, who instructed Officer Luna to arrest Plaintiff. The reasoning behind this designation of Lt. Floyd as a final policymaker is his "issuing an order to a large group of officers to 'arrest all members of the group' and by virtue of his rank." (Doc. 14, ¶ 50). Also, Plaintiff

alleges that Lt. Floyd was a final policymaker because "his order to arrest protesters . . . was not reviewable in any way . . . ." (Doc. 15, ¶ 48).

Plaintiff cannot plausibly allege that Lt. Floyd is a final policymaker by virtue of issuing an arrest order. *See Baker v. City of Atlanta*, 2023 WL 2583116, at *5 (N.D. Ga. March 20, 2023). While the Complaint alleges that Lt. Floyd had authority to order arrests, there are no allegations that he could create an APD custom or policy through his actions or inactions. More succinctly, he could not create a policy. Ordering arrests is supervisory; it is completely different from making a policy. This Court has held that issuing a dispersal order, which is similar to issuing an arrest order, is insufficient to create final policymaking authority. *See Toole v. City of Atlanta*, 2019 WL 13021157, at *10 (N.D. Ga. March 26, 2019). Thus, by definition, he is not a final policymaker as to any practice, custom, or policy as described in the Complaint.

Similarly, there are no allegations showing that Lt. Floyd had any authority over any aspect of training APD officers, specifically Officer Luna. Given that he had no authority over when or how to train officers, he was not the final policymaker as to the training of APD officers on protecting and respecting citizens' First Amendment rights. Without such authority, he was not deliberately indifferent to a need to train.

18

Because Plaintiff "fails to attribute any act or knowledge on the [City]'s final policymakers, [he] fails to adequately allege an unofficial pattern or practice of a failure to train." *Whitaker v. Miami-Dade County*, 126 F. Supp. 3d 1313, 1324 (S.D. Fla. 2015)

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the City respectfully requests that this Court inquire into and grant its Motion to Dismiss, dismissing all of Plaintiff's claims against it.

Respectfully submitted this 12th day of January, 2024.

| | **HALL BOOTH SMITH, P.C.** |
|---|---|
| 191 Peachtree Street, N.E.<br>Suite 2900<br>Atlanta, GA 30303-1775<br>Tel:  (404) 954-5000<br>Fax:  (404) 954-5020<br>dware@hallboothsmith.com<br>pfriduss@hallboothsmith.com<br>nkinsley@hallboothsmith.com | */s/ R. David Ware*<br>*/s/ Phillip E. Friduss*<br>*/s/ Nicholas A. Kinsley*<br>R. DAVID WARE<br>Georgia Bar No. 737756<br>PHILLIP E. FRIDUSS<br>Georgia Bar No. 277220<br>NICHOLAS A. KINSLEY<br>Georgia Bar No. 273862<br><br>*Counsel for Defendant City of Atlanta* |

## **LOCAL RULE 7.1D CERTIFICATION**

Pursuant to Local Rule 7.1D for the Northern District of Georgia, the undersigned counsel for Defendant City of Atlanta certifies that the above and foregoing is a computer document prepared in Times New Roman (14 point) font in accordance with Local Rule 5.1B and C.

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JOHNNA GADOMSKI,

                    Plaintiff,

        v.

CITY OF ATLANTA, LIEUTENANT
DESMOND FLOYD, in his individual
capacity, and OFFICER ZADY LUNA,
in his individual capacity,

                    Defendants.

CIVIL ACTION FILE NO.
1:23-cv-04036-VMC

---

## CERTIFICATE OF SERVICE

I hereby certify that on this day I have electronically filed the foregoing **BRIEF IN SUPPORT OF DEFENDANT CITY OF ATLANTA'S MOTION TO DISMISS AMENDED COMPLAINT** with the Court using the CM/ECF System and served a copy via the e-filing system, which will automatically serve all parties to this matter:

Drago Jr. Cepar
**Drago Cepar Jr., Esq**.
1900 The Exchange, Suite 490
Atlanta, GA 31139
770-940-3233
dcepar@gmail.com
*Counsel for Plaintiff*

This 12th day of January, 2024.

| | **HALL BOOTH SMITH, P.C.** |
|---|---|
| 191 Peachtree Street, N.E.<br>Suite 2900<br>Atlanta, GA 30303-1775<br>Tel:  (404) 954-5000<br>Fax:  (404) 954-5020<br>dware@hallboothsmith.com<br>pfriduss@hallboothsmith.com<br>nkinsley@hallboothsmith.com | */s/ R. David Ware*<br>*/s/ Phillip E. Friduss*<br>*/s/ Nicholas A. Kinsley*<br>R. DAVID WARE<br>Georgia Bar No. 737756<br>PHILLIP E. FRIDUSS<br>Georgia Bar No. 277220<br>NICHOLAS A. KINSLEY<br>Georgia Bar No. 273862<br><br>*Counsel for Defendant City of Atlanta* |