IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOHNNA GADOMSKI, et al.,

    Plaintiffs,

    v.

CITY OF ATLANTA, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:23-CV-4036-TWT[1]

## OPINION AND ORDER

This is a civil rights action. It is before the Court on the Defendant City of Atlanta's Motion to Dismiss [Doc. 22] and Motion to Take Judicial Notice [Doc. 26]. For the following reasons, the City's Motion to Dismiss [Doc. 22] is GRANTED in part and DENIED in part, and its unopposed Motion to Take Judicial Notice [Doc. 26] is GRANTED. The City's Motion to Dismiss the original Complaint [Doc. 12] is DENIED as moot.

### I.    Background[2]

This consolidated case arises from a protest in Atlanta that took place outside the home of then-Councilwoman Natalyn Archibong on September 8, 2021, over the proposed construction of a police training facility (referred to as

---

[1] On April 5, 2024, the Court consolidated this action with four related cases numbered 1:23-cv-04037-TWT, 1:23-cv-04038-TWT, 1:23-cv-04039-TWT, and 1:23-cv-04041-TWT.

[2] The Court accepts the facts as alleged in the Amended Complaint as true for purposes of the present Motion to Dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

Cop City). (Am. Compl. ¶¶ 12–13). The protestors held signs and chanted on the road outside the Councilwoman's house, making a conscious effort to stand as close to the curb of the street as possible so as not to obstruct traffic, while at the same time not stepping on the grass of her property. (*Id.* ¶ 14–15 (noting the street did not have sidewalks)). Shortly after the protest began, City of Atlanta Police Department officers arrived on the scene but did not take any action to interrupt the protest. (*Id.* ¶ 17). The officers eventually announced that the protesters were in violation of a noise ordinance, and the protesters ceased the use of their megaphones. (*Id.* ¶¶ 17–19). Within approximately forty minutes of their arrival, the officers told the protesters they were obstructing traffic and had to leave. (*Id.* ¶ 20).

The protesters then started to walk back and forth while chanting (as opposed to standing in place), but after a few minutes, the protesters decided to leave the area for fear of being arrested. (*Id.* ¶¶ 20–21). Around this time, the Defendant Lieutenant Desmond Floyd gave the order to arrest all the protesters. (*Id.* ¶ 21). The Plaintiffs Johnna Gadomski, Juan Zapata, Hadar Ben Simon, Kelsey Smith, and Lev Omelchenko were arrested and charged with violating the pedestrian in the roadway statute (O.C.G.A. § 40-6-96). (Br. in Supp. of Mot. to Consolidate ¶ 5). Zapata alleges that he was also charged with obstruction. (*Id.* ¶ 5).

The Plaintiffs filed their respective suits against Lieutenant Floyd, their respective arresting officer(s) (Officer Zady Luna, Officer Jason Brayboy, Officer Cesar Gonzalez, Officer Paul Vendryes, and Officer Carl Miller), and the City of Atlanta on September 8, 2023. The Plaintiffs allege that they were arrested because of their participation in the protest, not due to violating any law. (Am. Compl., at 1–2). They assert claims under 42 U.S.C. § 1983, the First, Fourth, and Fourteenth Amendments to the United States Constitution, and O.C.G.A. § 51-7-40. On December 15, 2023, the City and Lieutenant Floyd filed a motion to consolidate the cases under Federal Rule of Civil Procedure 42(a), which this Court granted. The City now moves to dismiss the lone § 1983 claim against it.

## II.     Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A.*

*v. Latin Amwi. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.   Discussion

The City moves to dismiss the Plaintiffs' *Monell* claim for failure to state a claim. (Br. in Supp. of City's Mot. to Dismiss, at 1–2). It argues that the Plaintiffs have not pleaded the existence of a custom or policy that was the moving force behind any alleged constitutional violation under either of their two theories to support *Monell* liability. (*Id.* at 6–7 (framing the theories as (1) insufficient training of the City's officers as to citizens' First Amendment rights and (2) routine arrests of protestors under the pretext of violating the pedestrian in the roadway statute)). The City also contends that the Plaintiffs' alleged past incidents supporting their *Monell* theories are insufficient to prove municipal liability. (*Id.* at 10–15). Finally, the City argues that the Plaintiffs confuse the role of the final policymaker and that the City's final policymaker

4

was not on notice of a need to train or of an unconstitutional arrest policy or custom. (*Id.* at 15–19).

In response, the Plaintiffs argue that the other arrests substantiating their *Monell* theories support the existence of an unconstitutional custom. (Resp. Br. in Opp'n to City's Mot. to Dismiss, at 1–3). They claim that, as the incidents alleged in the Amended Complaint suggest, individuals engaged in protest are routinely arrested under the pedestrian in the roadway statute despite the lack of citations for jaywalking generally. (*Id.* at 5). And they contend that the examples of alleged constitutional violations occurring *after* their arrests still tend to show that the City had a custom of arresting protestors in this pretextual manner. (*Id.* at 10). Finally, the Plaintiffs argue that the Defendant Floyd constitutes a final policymaker on issues of arrest policy because he was insulated from administrative review of his decisions. (*Id.* at 11–15).

Under *Monell*, a local government body is liable under § 1983 when the execution of its policy or custom constitutes the "moving force" that inflicts injury upon an individual in violation of her constitutional rights. *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978). To state a claim for § 1983 liability against a municipality or other local government entity, a plaintiff must allege plausible facts showing (1) that her constitutional rights were violated, (2) that the municipality had a custom or policy that constituted

deliberate indifference to her constitutional rights, and (3) that the custom or policy caused her constitutional violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). A plaintiff "has two methods by which to establish a [City's] policy: identify either (1) an officially promulgated [City] policy or (2) an unofficial custom or practice of the [City] shown through the repeated acts of a final policymaker for the [City]." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citations omitted). The present case does not implicate an officially promulgated City policy, so only the unofficial custom or practice inquiry is relevant here.

The Court concludes that the Plaintiffs plead a plausible *Monell* claim against the City under their pretextual arrest theory but not under their inadequate training theory. Beginning with the latter, the Plaintiffs allege that the City "has a long history of not adequately training its officers when it comes to protecting and respecting citizens' First Amendment rights," including "violating citizens' rights to film the police that ultimately resulted in a contempt order against the City in 2015." (Am. Compl. ¶ 39). But the Court finds such allegations fail to establish a plausible *Monell* liability claim for several reasons. First, the Court finds no allegations that would clear the high bar required to show municipal liability under an inadequate training theory, which occurs only under "limited circumstances." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citation omitted). Second, the circumstances

6

giving rise to the Plaintiffs' arrests here, while protesting Cop City, are too attenuated from the facts giving rise to the 2015 contempt order, pertaining to a citizen's right to film police, to support their insufficient training theory. *See Baker v. City of Atlanta*, 662 F. Supp. 3d 1308, 1319 (N.D. Ga. 2023) ("That both the prior incident and this case involve citizens exercising their First Amendment rights is not sufficient to transfer the need for training in one specific area (a citizen's right to film police) to the need for training in a distinct area (a citizen's right to peacefully protest)."). Third and finally, the inadequate training policy must be the "moving force behind the constitutional violation." *Id.* (quotation marks and citation omitted). But here, the Plaintiffs' arrests were caused by Lieutenant Floyd's alleged unilateral arrest order, rather than any lack of training on any of the officers' parts. *See Cuesta v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 285 F.3d 962, 967 (11th Cir. 2002) ("It is not sufficient for a government body's policy to be tangentially related to a constitutional deprivation."). Therefore, the Plaintiffs have failed to state a *Monell* claim under their insufficient training theory.

The Plaintiffs' pretextual arrest theory, on the other hand, survives plausible scrutiny at the motion to dismiss stage. The City attempts to explain away the various instances of protestor arrests that the Plaintiffs reference in the Amended Complaint in support of their theory. (Br. in Supp. of City's Mot. to Dismiss, at 10–15). But the City's efforts are unavailing. In their Amended

7

Complaint, the Plaintiffs alleged that a January 2021 protest in Atlanta resulted in an arrest of 19 protestors under the pedestrian in the roadway statute pursuant to "an order given by a high ranking officer to arrest all protesters on the scene." (Am. Compl. ¶ 40). The protestors filed suit against the arresting officers and the City, including a claim for § 1983 municipal liability. *Baker*, 662 F. Supp. 3d at 1316. In its brief, the City notes that this court dismissed the protestors' *Monell* claim in *Baker*. (Br. in Supp. of City's Mot. to Dismiss, at 10, 12). The protestors in *Baker* alleged that the "officers arrested them pursuant to direct instructions from a final policy maker, specifically, Captain Harper," but the court dismissed the *Monell* claim, in part, because Captain Harper was not a final policymaker as contemplated by the municipal regulation. *Baker*, 662 F. Supp. 3d at 1320. Although the Plaintiffs here have alleged that Lieutenant Floyd was a final policymaker, (Am. Compl. ¶ 48), the Court concludes that such an allegation does not foreclose the Plaintiffs' *Monell* claim, even if the chief of police in fact held all final policymaking authority.

Relevant here, a plaintiff may establish *Monell* liability "by showing that . . . *someone with final policymaking authority adopts or ratifies the unconstitutional act or decision of a subordinate.*" *Rogers v. City of Atlanta*, 214 F. Supp. 3d 1314, 1317 (N.D. Ga. 2016) (emphasis added) (quotation marks and citation omitted). "So not all theories of municipal liability under § 1983

8

require (or depend on) a single final policymaker." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). Thus, even if Lieutenant Floyd did not have final policymaker authority, the Plaintiffs still plead a viable *Monell* claim because someone with final policymaking authority (the police chief) plausibly ratified his allegedly unconstitutional acts (and the acts of other police leaders who have allegedly ordered such pretextual arrests). (*See* Am. Compl. ¶ 40 (alleging "that there is an official policy or directive by final policy maker(s) within the City of Atlanta to engage in practice of arresting protesters under the pretext of violating pedestrian in the roadway laws and the City – if not deliberately promoting this policy – is at the very least deliberately indifferent to it")).

The City contests the relevance of several protestor arrests referenced in the Amended Complaint, claiming that the allegations lack sufficient detail to support the *Monell* claim. (Br. in Supp. of City's Mot. to Dismiss, at 11, 13–14). Regarding the May 2022 arrest in Inman Park, the Court disagrees with the City's characterization of the arrest as lacking allegations "suggesting that the arrests were improper." (*Id.* at 13 (citing Am. Compl. ¶ 40)). Rather, the Plaintiffs allege that the "protesters were ultimately arrested in a public park where they could not have possibly been violating pedestrian in the roadway laws." (Am. Compl. ¶ 43; Resp. Br. in Opp'n to City's Mot. to Dismiss, at 7). And regarding the alleged lack of detail to support the arrests of protestors

9

Silverstein, Dixon, and Seal, (Br. in Supp. of City's Mot. to Dismiss, at 14), the Court accepts the allegations as true and finds them sufficient at this stage to support the Plaintiffs' pretextual arrest theory under *Monell*.

The City also objects to the relevance of several alleged protestor arrests that occurred after the Plaintiffs' arrest and therefore, it contends, could not have put the City on notice of any unconstitutional policy. (Br. in Supp. of City's Mot. to Dismiss, at 11, 13–15). The City notes that "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the city and the opportunity to conform to constitutional dictates." (*Id.* at 16 (citing *Connick v. Thompson*, 563 U.S. 51, 63 n.7 (2011) (quotation marks, alteration, and citation omitted))). But *Connick* deals with cases of constructive notice of unconstitutional conduct, as opposed to the alleged actual knowledge of the police chief here through routine ratification of the pretextual arrest orders. *Connick*, 563 U.S. at 62–63, 63 n.7; *see also Thompson v. Sheriff, Pinellas Cnty. FL*, 542 F. App'x 826, 829–30 (11th Cir. 2013). And this court has previously allowed subsequent instances of unconstitutional conduct to support a "real-time custom." *Watchulonis v. City of Atlanta*, No. 1:23-cv-2204, Doc. 38, at 12 (N.D. Ga. Dec. 13, 2023) (citation omitted). Accordingly, that certain arrests alleged in the Amended Complaint occurred after the arrests of the Plaintiffs does not preclude their relevance to the City's alleged custom.

10

In sum, the Court finds that the pretextual arrests alleged by the Plaintiffs in their Amended Complaint plausibly support their *Monell* theory of liability at the motion to dismiss stage. (Am. Compl. ¶¶ 40–41, 43–44). They allege more than just one or two instances of pretextual protestor arrests under the pedestrian in the roadway statute, and thus, their allegations are sufficient. *See Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1122 (N.D. Ga. 2016). If the City of Atlanta Police Department indeed employs a practice of arresting protestors under the pedestrian in the roadway statute, without regard for whether the protestors are in the roadway and/or as a pretext for their protected expressive activity, such a practice could plausibly constitute deliberate indifference to the protestors' constitutional rights. The City's Motion to Dismiss should therefore be denied as to the Plaintiffs' pretextual arrest theory. The issue may be revisited at the summary judgment stage.

### IV.   Conclusion

For the foregoing reasons, the City's Motion to Dismiss [Doc. 22] is GRANTED in part and DENIED in part. It is granted as to insufficient training theory of *Monell* liability, and it is denied as to pretextual arrest theory of *Monell* liability. The City's unopposed Motion to Take Judicial Notice [Doc. 26] is GRANTED, and its Motion to Dismiss the original Complaint [Doc. 12] is DENIED as moot.

11

SO ORDERED, this \_\_\_20th\_\_\_ day of June, 2024.

                                                                          /s/ Thomas W. Thrash  
                                                                          THOMAS W. THRASH, JR.  
                                                                          United States District Judge