IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOHNNA GADOMSKI, et al.,

    Plaintiffs,

      v.

CITY OF ATLANTA, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:23-CV-4036-TWT[1]

## OPINION AND ORDER

This is a civil rights action. It is before the Court on Defendants City of Atlanta and Desmond Floyd's Motion for Summary Judgment [Doc. 99], Defendants Zady Luna, Carol Miller, and Cesar Gonzalez's Motion for Summary Judgment [Doc. 101], and Defendants Paul Vendryes and Jason Brayboy's Motion for Summary Judgment [Doc. 106]. For the reasons set forth below, the Court GRANTS the Defendants City of Atlanta and Floyd's Motion for Summary Judgment [Doc. 99], GRANTS the Defendants Luna, Miller, and Gonzalez's Motion for Summary Judgment [Doc. 101], and GRANTS the Defendants Vendryes and Brayboy's Motion for Summary Judgment [Doc. 106].

---

[1] On April 5, 2024, the Court consolidated this action with four related cases: 1:23-cv-04037-TWT, 1:23-cv-04038-TWT, 1:23-cv-04039-TWT, and 1:23-cv-04041-TWT.

## I.   Background[2]

This case arises from a protest in Atlanta that took place outside the home of a City Council member in 2021 over the proposed construction of a controversial police training facility referred to by some as "Cop City." (Defs. City of Atlanta & Floyd's Statement of Undisputed Material Facts ("SUMF") ¶¶ 2–3 [Doc. 99-2].) Approximately ten protesters were present, (Defs. Vendryes & Brayboy's SUMF ¶ 8 [Doc. 106-2]), including Plaintiffs Johnna Gadomski, Hadar Ben Simon, Lev Omelchenko, Kelsey Smith, and Juan Zapata. The group held signs and chanted on the street, with one protester chanting through a bullhorn. (Defs. Vendryes & Brayboy's Notice of Filing, Ex. K ("Vendryes Body Camera"), at 19:47:05–19:47:25 [Doc. 107].) The street did not have a sidewalk or shoulder. (*Id.* at 19:43:37.)

The events that transpired were captured on video by officers' body cameras as well as one protester's phone.[3] Defendant Desmond Floyd, a

---

[2] The operative facts on the Motion for Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

[3] The Plaintiffs are visible in the body camera footage wearing the following clothing: Gadomski wore a gray short-sleeve t-shirt and black pants. (Defs. City of Atlanta & Floyd's SUMF ¶ 4.) Omelchenko wore a black shirt and red shorts. (*Id.* ¶ 5.) Ben Simon wore a yellow tank top and dark pants. (*Id.* ¶ 6.) Smith wore a black shirt, jean shorts, and a baseball cap. (*Id.* ¶ 7.) Zapata wore a black top, blue shorts, and a blue and beige jacket. (Defs. Luna, Miller, and Gonzalez's SUMF ¶ 4 [Doc. 101-2].)

lieutenant of the Atlanta Police Department ("APD"), arrived on the scene and concluded with another officer that the group was violating the noise ordinance and pedestrian-in-the-roadway law. (Defs. City of Atlanta & Floyd's Notice of Filing, Ex. D ("Floyd Body Camera"), at 19:44:10–19:45:40 [Doc. 100].) Floyd approached the protesters and attempted to get their attention, before stating he would return to his police cruiser to use the speaker. (*Id.* at 19:47:05–19:47:48.) Immediately afterward, Floyd requested additional units from dispatch. (*Id.* at 19:47:48–19:48:45.) He then used his police cruiser's speaker to introduce himself to the protesters and announce the following:

> "[A]t this moment, you are in violation of a couple of city ordinances. You are in violation of the noise ordinance. You are also in violation of pedestrian duties. You're obstructing the public way in the roadway. I'm going to ask that you all leave peacefully. If not, we're going to have to take you guys into custody. So please leave the roadway, and please do not speak on the megaphone. It's in violation of . . . the City noise ordinance. And I'm going to ask that you all clear the roadway right now."

(*Id.* at 19:49:10–19:50:03.)

The protesters stopped using the bullhorn after the announcement. (*See, e.g.*, Vendryes Body Camera, at 19:50:03–19:51:15.) Less than two minutes after the announcement, Floyd stated to another officer, "we're gonna lock them up as soon as we get enough resources." (Floyd Body Camera, at 19:51:40–19:51:45.) Meanwhile, the protesters began walking down the street and back again while chanting, "Vote no. We won't go," and "Vote no. We'll be right back." (*Id.* at 19:52:31–19:54:05, 19:54:45–19:55:18.) Approximately six

minutes after the announcement, the protesters left the scene. (*Id.* at 19:56:10–19:56:45.) Around the same time, Floyd ordered the arrest of the protesters. (*Id.* at 19:56:01–19:56:15.) Officers then arrested all the protestors, including the Plaintiffs, and cited them for violating the pedestrian-in-the-roadway statute, O.C.G.A. § 40-6-96. (Defs. Luna, Miller, and Gonzalez's SUMF ¶¶ 35, 39, 42–44 [Doc. 101-2]; Defs. Vendryes & Brayboy's SUMF ¶¶ 44, 46.) Plaintiff Zapata was additionally cited for obstruction, Atlanta, Ga., Code of Ordinances, art. III, § 106-81 (1995).[4] (Defs. Vendryes & Brayboy's SUMF ¶ 46.)

The Plaintiffs were subsequently prosecuted in the Atlanta Municipal Court, where their charges were bound over to state court. (Pls.' Additional SUMF ¶ 45 [Doc. 112-2].[5]) Plaintiff Smith's charges have since been dismissed, but the other Plaintiffs have yet to receive a formal dismissal. (*Id.*) The Plaintiffs filed five individual suits against Floyd, their respective arresting officer (Zady Luna, Jason Brayboy, Cesar Gonzalez, Paul Vendryes, or Carl Miller), and the City of Atlanta. They each allege that they were arrested due to their participation in the protest, not due to violating any law.

---

[4] Plaintiff Zapata did not allege the law under which he was cited, but the Court presumes he was cited for violating the Atlanta Code of Ordinances.

[5] Defendants Vendryes, Brayboy, City of Atlanta, and Floyd object to this fact for failure to be numbered properly but not for its contents. (Defs. Vendryes & Brayboy's Resp. to Pls.' Additional SUMF ¶ 45 [Doc. 127]; Defs. City of Atlanta & Floyd's Resp. to Pls.' Additional SUMF ¶ 45 [Doc. 128].)

(*See, e.g.*, Pl. Gadomski's Am. Compl., at 1–2 [Doc. 14].) They assert claims under 42 U.S.C. § 1983 for violations of the First, Fourth, and Fourteenth Amendments, and they assert claims under O.C.G.A. § 51-7-40. The Court consolidated all five cases pursuant to Rule 42(a) and now considers the Defendants' Motions for Summary Judgment.

## II.   Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III.   Discussion

### A. Fourth Amendment (Counts I–II)

Alleging that their arrests lacked probable cause, the Plaintiffs assert § 1983 claims for false arrest (Count I) and malicious prosecution (Count II) under the Fourth and Fourteenth Amendments The Defendants claim

5

qualified immunity from these claims. "Qualified immunity shields government employees from suit in their individual capacities for discretionary actions they perform while going about their duties." *Brooks v. Miller*, 78 F.4th 1267, 1281 (11th Cir. 2023). To raise a qualified immunity defense, the Defendants must establish that they acted within their discretionary authority. *Bridges v. Poe*, 155 F.4th 1302, 1313 (11th Cir. 2025) (citation omitted). Conduct falls within an officer's discretionary authority if the conduct was "(1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (citation omitted). If a defendant shows that his conduct was a discretionary function, the plaintiff must then establish that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Aguirre v. Seminole County*, 158 F.4th 1276, 1296 (11th Cir. 2025) (citation omitted).

There being no dispute that the officers were performing discretionary duties, the Court begins with the key question of whether the arresting officers violated the Plaintiffs' Fourth Amendment rights. The presence of probable cause defeats both false arrest and malicious prosecution claims, as there can be no Fourth Amendment violation if probable cause exists. *Brooks v. Miller*, 78 F.4th at 1281 (citation omitted) (regarding § 1983 false arrest claims); *Williams v. Aguirre*, 965 F.3d 1147, 1159 (11th Cir. 2020) (regarding § 1983 malicious prosecution claims).

6

An officer has probable cause if "a reasonable officer could conclude that there was a substantial chance of criminal activity." *Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)) (rejecting prior circuit precedent that used a higher probable cause standard); *Harris v. Hixon*, 102 F.4th 1120, 1126 (11th Cir. 2024) ("A substantial chance is all that is required, not an actual showing of such activity." (citation omitted)). This inquiry must "examine the events leading up to the arrest" and "the[ ] historical facts, viewed from the standpoint of an objectively reasonable police officer." *Wesby*, 583 U.S. at 56–57 (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). Generally, a finding of probable cause is "not a high bar." *Id.* (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

### 1.  Pedestrian-in-the-Roadway Violation

The Plaintiffs in this case were arrested for violating O.C.G.A. § 40-6-96. Section (d) of that provision provides: "Where neither a sidewalk nor a shoulder is available, any pedestrian standing or striding along and upon a highway shall stand or stride as near as practicable to an outside edge of the roadway, and, if on a two-lane roadway, shall stand or stride only on the left side of the roadway."[6] O.C.G.A. § 40-6-96(d). The Georgia Code does not define the phrase "as near as practicable."

---

[6] The Defendants contend the Plaintiffs violated subsection (e) of

The Court concludes that the Defendants had probable cause to arrest each of the Plaintiffs.[7] Whether or not it is typical of an officer to arrest a person for obstructing the roadway, in the Court's view, a "reasonable officer could conclude that there was a substantial chance" the Plaintiffs were obstructing the roadway and not standing as close as practicable to the curb, in violation of O.C.G.A. § 40-6-96(d). While a number of the protesters do appear to stay reasonably close to the curb throughout the protest, video footage places the five Plaintiffs some distance away from the curb at various points. The footage is not perfect and may reflect some distorted angles, but it sufficiently depicts what the officers saw or may have seen, which is the relevant perspective.

---

O.C.G.A. § 40-6-96 as well. (*See, e.g.*, Reply Br. in Supp. of Defs. Luna, Miller, and Gonzalez's Mot. for Summ. J., at 5 [Doc. 129].) Finding probable cause below under subsection (d), the Court need not conduct a separate probable cause analysis under subsection (e).

[7] The Defendants argue that they possessed "arguable probable cause" sufficient to defeat the Fourth Amendment claims. (*See, e.g.*, Br. in Supp. of Defs. City of Atlanta & Floyd's Mot. for Summ. J., at 15.) The Eleventh Circuit has clarified that the "arguable probable cause" inquiry is "no different from the clearly established law inquiry" under qualified immunity. *Edger v. McCabe*, 84 F.4th 1230, 1236 (11th Cir. 2023) (quoting *Garcia v. Casey*, 75 F.4th 1176, 1187 (11th Cir. 2023)); *see also Garcia*, 75 F.4th at 1187 ("[T]he doctrine of 'arguable probable cause' is a useful shorthand to collapse [ ] three inquiries [regarding whether officers' have "notice their conduct is unlawful"] into a single question in a wrongful arrest case."). Because the Defendants possessed actual probable cause and thus did not violate the Fourth Amendment under the first qualified immunity prong, the Court need not reach the second prong regarding clearly established law.



(Floyd Body Camera, at 19:52:38 (showing Plaintiff Ben Simon in a yellow tank top and shorts in the middle of the road, holding up a sign).)



(*Id.* at 19:44:51 (showing Plaintiff Gadomski in a gray t-shirt and black pants standing near the middle of the road).)

9



(*Id.* at 19:47:03 (showing Plaintiff Omelchenko standing near the middle of the road, in a black t-shirt and red shorts).)



(Defs. City of Atlanta & Floyd's Notice of Filing, Ex. C, at 0:42 (showing Plaintiff Zapata, second from the left, in a black top, a blue and beige jacket tied around his waist, and white shoes at some distance from the curb).)



(Defs. City of Atlanta & Floyd's Notice of Filing, Ex. H, at 4:54 (showing Plaintiff Smith walking at some distance from the curb in a black t-shirt, jean shorts, red shoes, and baseball cap).) These instances are sufficient to establish probable cause under O.C.G.A. § 409-6-96(d)—at least as to the Plaintiffs.

The Court recognizes that the Plaintiffs may have been in violation of O.C.G.A.§ 40-6-96(d) for only brief periods of time—sometimes only ten or twenty seconds. Indeed, there is plenty of footage of the Plaintiffs standing directly next to the curb in apparent compliance with O.C.G.A.§ 40-6-96(d). (*See* Floyd Body Camera, at 19:52:06 (showing all protesters appearing to stand very close to the curb in the minutes after Floyd's speaker announcement).) But, as to roadway violations, the length of the supposed violation is irrelevant. *See Schilling v. Doherty*, 764 F. Supp. 3d 1293, 1298–1301 (N.D. Ga. 2024) (finding probable cause for a pedestrian-in-the-roadway violation where the plaintiff stepped into the road, away from the sidewalk and

11

crosswalk, only for a brief moment). Similarly, the fact that police officers may infrequently arrest individuals for being in the roadway does not negate the presence of probable cause.

### 2. Obstruction Violation

The Court next considers whether Plaintiff Zapata's obstruction charge is supported by probable cause. See *Goldring v. Henry*, 2021 WL 5274721, at *5 (11th Cir. 2021) (citing *Williams*, 965 F.3d at 1158–62 ("[T]he 'any-crime' rule—under which officers are insulated from false-arrest claims as long as probable cause exists to arrest the suspect for some crime—does not apply in the malicious-prosecution context.")). A person is liable for obstruction if he "knowingly and willfully obstructs or hinders any law enforcement officer." O.C.G.A. § 16-10-24.

Here, the Court finds probable cause for Zapata's obstruction charge. Defendant Brayboy testified that Zapata "refused to put his hands behind his back" following Defendant Gonzalez's order to do so. (Brayboy Decl. ¶ 7 [Doc. 106-3].) The Plaintiffs dispute this fact and point to Gonzalez's body camera footage to refute any obstruction. (*See* Pls.' Resp. to Defs. Vendryes & Brayboy's SUMF ¶ 42 (citing Defs. Luna, Miller, and Gonzalez's Notice of Filing, Ex. L, at 19:56:50 [Doc. 111]).) While the Plaintiffs are correct that Gonzalez's body camera does not show any obstruction at the cited time, it is only because the camera is temporarily blocked. (*See id.* at 19:56:45–19:56:53 (showing no discernable movements).) The footage otherwise corroborate

12

Brayboy's testimony: it shows Gonzalez ordering Zapata to put his hands behind his back; Zapata's hands remaining in front of his person immediately afterward; eight seconds where nothing is visible; Gonzalez forcing Zapata onto the grass facedown and physically placing his right arm behind his back; and Zapata offering his arm afterward by saying, "here's my arm." (*See id.* at 19:56:40–19:57:20.) At best for the Plaintiffs, the footage could be characterized as supporting neither side due to the eight-second lull. Because the Plaintiffs presents no other evidence on the subject, however, the Court credits Brayboy's testimony.

In sum, the Court holds that the officers had probable cause to arrest and prosecute the Plaintiffs on all crimes charged. The constitutional claims for unlawful seizure (Count I) and malicious prosecution (Count II) therefore fail, and the Defendants are entitled to qualified immunity.

## B. State Law (Count IV)

The Plaintiffs allege a Georgia state law claim for malicious prosecution (Count IV) under O.C.G.A. § 51-7-40. In Georgia, the elements of malicious prosecution are (1) a criminal prosecution; (2) instigated without probable cause; (3) with malice; (4) pursuant to a valid warrant, accusation, or summons; (5) that terminated in the plaintiff's favor; and (6) caused the plaintiff damage." *Gibbs v. Loomis, Fargo, & Co.*, 259 Ga. App. 170, 172 (2003). Having already found that the officers possessed probable cause, the Plaintiffs cannot establish one of the essential elements of this tort under Georgia law.

13

*Smith v. Grant*, 377 Ga. App. 370, 374 (2025) ("The existence of probable cause is an absolute defense to a claim of malicious prosecution." (quoting *Holmes v. Achor Ctr., Inc.*, 242 Ga. App. 887, 889 (2000))). The Defendants are therefore entitled to summary judgment as to Count IV. The Court need not consider the Defendants' official immunity defense.

### C. First Amendment (Counts V–VI)

Each Plaintiff alleges a First Amendment retaliation claim (Count V), and Plaintiff Omelchenko additionally alleges a First Amendment right-to-film claim (Count VI).[8] "[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (citation modified). To establish a First Amendment retaliation claim, a plaintiff must establish that (1) "[he or she] engaged in constitutionally protected speech," (2) "the defendant's retaliatory conduct adversely affected the protected speech," and (3) "a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech" *Prospero v. Sullivan*, 153 F.4th 1171, 1183 (11th Cir. 2025) (citation omitted). For allegations of retaliatory arrests, the third element generally requires the "absence of probable cause." *Turner v. Williams*, 65 F.4th 564, 581 (11th Cir. 2023) (quoting *Nieves*, 587

---

[8] The Defendants do not distinguish between these types of claims for the purposes of their summary judgment arguments, so the Court will not either.

U.S. at 400). However, the Plaintiffs argue that the no-probable-cause exception under *Nieves v. Bartlett*, 587 U.S. 391 (2019), applies. (Pls.' Resp. Br. in Opp'n to Defs.' Mots. for Summ. J., at 19–20 [Doc. 112-1].)

The *Nieves* exception provides that "[t]he existence of probable cause does not defeat a plaintiff's [First Amendment retaliation] claim if he produces 'objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.'" *Gonzalez v. Trevino*, 602 U.S. 653, 655 (2024) (per curiam) (quoting *Nieves*, 587 U.S. at 407). The Supreme Court offered jaywalking as an example under which *Nieves* might apply. *Nieves*, 587 U.S. at 407. Because "jaywalking is endemic but rarely results in arrest," the Supreme Court reasoned that "it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest." *Id.* The Plaintiffs argue that, like jaywalking, "walking on a neighborhood street" is the "type of conduct that does not usually trigger an arrest under any statute." (Pls.' Resp. Br. in Opp'n to Defs.' Mots. for Summ. J., at 21.)

The Defendants claim qualified immunity, denying that they violated a First Amendment right and that such a right was clearly established. First, they argue that the Plaintiffs cannot prove causation due to the presence of probable cause and that the Plaintiffs muster insufficient "comparator" evidence to establish the *Nieves* exception. (*See, e.g.*, Br. in Supp. of City of

15

Atlanta & Floyd's Mot. for Summ. J., at 14 [Doc. 99-1]; Reply Br. in Supp. of Defs. City of Atlanta & Floyd's Mot. for Summ. J., at 9–11 [Doc. 129].) Second, the Defendants argue that the *Neives* exception was not clearly established law at the time of the arrests because Eleventh Circuit precedent had characterized it as dicta. (Reply Br. in Supp. of Defs. Luna, Miller, and Gonzalez's Mot. for Summ. J., at 9–10 [Doc. 126]; Reply Br. in Supp. of Defs. City of Atlanta & Floyd's Mot. for Summ. J., at 8–9.) The Court addresses the clearly established law question first.

The Court begins with whether the *Nieves* exception was clearly established law at the time of the 2021 arrests. The Defendants concede that the exception was clearly established by the Eleventh Circuit's 2023 decision in *Turner v. Williams*, 65 F.4th 564(11th Cir. 2023). (*See, e.g.*, Reply Br. in Supp. of Defs. Luna, Miller, and Gonzalez's Mot. for Summ. J., at 10.) But the Court must determine if it was clearly established before then. At least two courts in this district have held that the Supreme Court clearly established the exception in its 2019 *Nieves* opinion. *Wells v. City of Union City*, 2025 WL 3088898, at *5 (N.D. Ga. Sept. 19, 2025) (vacating a prior order holding the opposite, following supplemental briefing on whether the *Nieves* exception was clearly established at the time of the plaintiff's 2019 arrest), *appeal docketed*, No. 25-13678 (11th Cir. Oct. 16, 2025); *Dixon v. City of Atlanta*, 2026 WL 295516, at *5 n.12 (N.D. Ga. Feb. 4, 2026); *see also Webb v. English*, 2021 WL 4340426, at *11 (M.D. Fla. Sept. 23, 2021) (suggesting that *Nieves* outlined

16

a clearly established right, though one unavailable to the plaintiff, whose arrest predated *Nieves*). A court in another district has held that the *Nieves* exception was not clearly established until the Eleventh Circuit considered the exception in *Turner*. *Brown v. Gonzalez*, 2025 WL 1787152, at \*10–11 (S.D. Ga. June 27, 2025). *Brown* relies on *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277 (11th Cir. 2019), in which the Eleventh Circuit characterized the Supreme Court's description of the exception in *Nieves* as dicta. *Id.* at 1298. The Court agrees with Judge Wood of the Southern District in *Brown* that in light of *DeMartini* the *Nieves* exception to the no probable cause rule was not clearly established law in the Eleventh Circuit so as to defeat a claim of qualified immunity.

### D. *Monell* Liability (Count III)

Count III alleges the City of Atlanta's liability under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), for violating the First Amendment. The Complaint alleges that the City used pedestrian-in-the-roadway charges as a pretext for retaliating against protected First Amendment speech. (Pl. Gadomski's Am. Compl. ¶ 40.) Under *Monell*, a § 1983 claim against a municipality will fail unless the plaintiff can show that the alleged constitutional violation resulted from the municipality's "policy or custom," either "made by its lawmakers or by those whose edicts may fairly be said to represent official policy." 436 U.S. at 694. A municipal official who is the "final policymaker . . . with respect to the subject matter in question" can

create such a policy or custom "in a single decision." *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir. 1989). *Monell* liability can also attach when a municipal official issues a decision that is later adopted or ratified by the final policymaker. *Matthews v. Columbia County*, 294 F.3d 1294, 1297 (11th Cir. 2002). But "[t]he final policymaker [ ] must ratify not only the decision itself, but also the unconstitutional basis for it." *Id.* (citing *Gattis v. Brice*, 126 F.3d 724, 727 (11th Cir. 1998)).

Here, the Plaintiffs allege that the Atlanta Chief of Police "delegated final policy making authority" to Defendant Floyd to decide on "particular criminal charge[s] to suppress" Cop City protests. (*See, e.g.*, Pl. Gadomski's Am. Compl. ¶ 48.) According to the Plaintiffs, the "Chief of Police was aware of the law enforcement actions during the protest in question and at a minimum approved them after the fact." (Pls.' Resp. Br. in Opp'n to Defs.' Mots. for Summ. J., at 22.) This argument is based on statements from Jessica Bruce, an APD major at the time. She testified that the City had been tracking Cop City protests in a specific database, (Pls.' Additional SUMF ¶¶ 25–26.[9]), and that she would provide "a regular update" to the Chief of Police about the "Stop Cop City movement," (Bruce Dep. at 15:5–16:11 [Doc. 114-1].) She also appears

---

[9] Defendants Vendryes, Brayboy, City of Atlanta, and Floyd object to this fact as immaterial but not as to its contents. (Defs. Vendryes & Brayboy's Resp. to Pls.' Additional SUMF ¶¶ 25–26; Defs. City of Atlanta & Floyd's Resp. to Pls.' Additional SUMF ¶¶ 25–26.)

to have been recorded in 2023 making some vague statements about the mayor, a raid of a fund related to Stop Cop City, and politics. (*See generally* Pls.' Notice of Filing, Ex. E–F.)

The Court grants the City's Motion for Summary Judgment as to *Monell* liability. The Plaintiffs' logic presumes too much. None of the proffered facts would come close to establishing that the Chief of Police approved the police tactics used in the present Cop City case nor that he delegated any final policymaking authority to Floyd. Therefore, the Defendants are entitled to judgment as a matter of law on Count III.

## IV.    Conclusion

For the reasons set forth above, the Court GRANTS the Defendants City of Atlanta and Desmond Floyd's Motion for Summary Judgment [Doc. 99], GRANTS the Defendants Zady Luna, Carol Miller, and Cesar Gonzalez's Motion for Summary Judgment [Doc. 101], and GRANTS the Defendants Paul Vendryes and Jason Brayboy's Motion for Summary Judgment [Doc. 106].

SO ORDERED, this ____6th____ day of August, 2026.

THOMAS W. THRASH, JR.
United States District Judge